UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

SEAN LEWIS,

                Plaintiff,

v.                                                                                          3:11-CV-1163
                                                                                  (GTS)

MICHAEL ASTRUE, Comm'r of Soc. Sec.,

                Defendant.
───────────────────────────────────────────────

APPEARANCES:                                          OF COUNSEL:

LACHMAN & GORTON                          PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 East Main Street
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.          BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Sean Lewis ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 16, 17.) For the reasons set forth below, Defendant's motion is granted, and Plaintiff's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on April 7, 1981. He completed some, but not all, of his high school education credits. During his life, Plaintiff has worked part time at a gas station, drive-through fast food restaurant and nursing home. Plaintiff's work history also includes part time work as a stock clerk in a grocery store. Generally, his alleged disability consists of bipolar disorder, panic attacks and a hip injury. His alleged disability onset date is February 9, 2009.

### B. Procedural History

On February 13, 2009, Plaintiff applied for Supplemental Security Income. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 19, 2010, Plaintiff appeared before the ALJ, Thomas P. Tielens. (T. 26-60.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on December 21, 2010. (T. 10-25.) On August 26, 2011, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-20.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. (T. 15.) Second, the ALJ found that Plaintiff's right hip pain and limitation status post surgery, affective disorder, anxiety related disorder, and substance addiction disorder are severe impairments. (*Id.*) Third, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R.

2

Part 404, Subpart P, Appendix. 1.  (T. 15-17.)  The ALJ considered listings 1.02, 12.04, 12.06 and 12.09.  (*Id.*)  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, except that he is limited to understanding, remembering and carrying out simple instructions.  (T. 17-19.)  Fifth, and finally, the ALJ determined that there are jobs that exist in the national economy that Plaintiff can perform.  (T. 20.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ erred in failing to properly assess Plaintiff's credibility.  (Dkt. No. 16 at 11-15 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ erred in failing to give controlling weight to Plaintiff's treating physician, and in failing to explain the weight given to the nurse practitioner who treated Plaintiff in conjunction with his treating physician.  (*Id.* at 15-19.)  Third, Plaintiff argues that the ALJ erred when he failed to consider and discuss lay witness testimony.  (*Id.* at 19-21.)  Fourth, and finally, Plaintiff argues that the ALJ erred when he failed to obtain vocational testimony, since Plaintiff's impairments included significant non-exertional impairments.  (*Id.* at 21-22.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues that the ALJ properly evaluated the medical opinion evidence in determining Plaintiff's RFC.  (Dkt. No. 17 at 6-12 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ properly evaluated Plaintiff's credibility.  (*Id.* at 12-15.)  Third, and finally, Defendant argues that the ALJ's determination at step five of the sequential analysis was supported by substantial evidence.  (*Id.* at 15-16.)

### III.     RELEVANT LEGAL STANDARD

#### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

  **B.**  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    Whether the ALJ Erred in Failing to Assign Controlling Weight to the Opinion of Plaintiff's Treating Physician and Failing to Explain the Weight Given to the Opinion of Plaintiff's Nurse Practitioner

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 6-12 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ erred in failing to assign controlling weight to the February 18, 2009 opinion of his treating physician, Mafuzur Rahman, M.D., that Plaintiff is markedly limited in his abilities to (1) perform activities within a schedule, maintain regular attendance and/or be punctual within customary tolerances; (2) complete a normal work day and work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) interact appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and (6) respond appropriately to ordinary stressors in the work setting. (T. 328-329.)

The ALJ stated that he "d[id] not give much weight" to this opinion because it "appears to be internally inconsistent" with the other treatment notes of Dr. Rahman, "appears to have [been] based . . . upon the subjective statements provided by" Plaintiff, whose reports the ALJ did not find fully credible, and "appears to be inconsistent with [Plaintiff's] actual activities of daily living." (T. 19.) Plaintiff argues that the ALJ erroneously substituted his judgment for that of Dr. Rahman and selectively relied on the parts of the record that support his conclusion instead of analyzing the record as a whole. Finally, Plaintiff argues that the ALJ also erred in failing to assess the opinion of nurse practitioner, Katie Moulton, who treated Plaintiff in conjunction with Dr. Rahman.

6

Under the "treating physician's rule," an ALJ must give controlling weight to the treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, No. 11-2907, 2012 WL 2096630, at *1 (2d Cir. June 12, 2012).  The factors an ALJ should consider when determining the proper weight of a treating physician's opinion include the following: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist.  *See* 20 C.F.R. § 404.1527(d); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  Regulations require ALJs to set forth their reasons for the weight they assign to a treating physician's opinion.  *Shaw*, 221 F.3d at 134.

Here, the ALJ did not specifically state that Dr. Rahman's opinion was inconsistent with other evidence in the record.  However, the ALJ did cite other record evidence that is inconsistent with Dr. Rahman's opinion, including that of consultative examiner, Dennis M. Noia, Ph.D.  In addition, the Court's review of the record reveals that Dr. Rahman's February 18, 2009 opinion is inconsistent with his own treatment records as well as those of nurse practitioner, Katie Moulton.  To be sure, the ALJ specifically referenced certain of Dr. Rahman's treatment notes, as well as Nurse Moulton's finding that Plaintiff showed no evidence of anxiety or mania.  (T. 18.)

> The ALJ [i]s not required to mention or discuss every single piece of evidence in the record. Where the evidence of record permits the court to glean the rationale of an ALJ's decision, the ALJ is not required to explain why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. Moreover, although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate that it was not considered.

*Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-9 (N.D.N.Y. 2005) (citations and quotations omitted). Here, as in *Barringer*, the ALJ's decision references all of the medical sources of record, and is based on substantial evidence. *See Barringer*, 358 F. Supp. 2d, at 79. Where, as here, the treating physician's opinion is not supported by, or consistent with, other evidence in the record, the ALJ is entitled to accord that opinion less than controlling weight, and may instead rely on the opinions of consultative examiners. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004], and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 [2d Cir. 1983]). Accordingly, here, the ALJ's decision assigning less than controlling weight to the February 18, 2009 opinion of Dr. Rahman is supported by substantial evidence and is affirmed.

    **B.**    **Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 12-15 [Def.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d

Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Plaintiff argues that the ALJ failed to consider each of the above factors, and that the ALJ's conclusion that Plaintiff's mental impairments, at most, only intermittently interfere with his daily activities is not supported by the record.

To be sure, the ALJ considered Plaintiff's daily activities and the duration, location and frequency of his symptoms. The ALJ did not, however, specifically address the remainder of the listed factors. Nonetheless, the Court's review of the record reveals that Plaintiff's statements about his limitations are not supported by the objective medical evidence. Accordingly, the ALJ's determination is affirmed in this regard. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.").

### C. Whether the ALJ Erred in Failing to Consider and Discuss Lay Witness Testimony

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 12-15 [Def.'s Mem. of Law].) The Court would only add the following brief analysis.

Plaintiff argues that the ALJ erred in failing to consider and discuss the testimony of Plaintiff's mother, and in failing to make credibility findings regarding her testimony. Again, where, as here, the record evidence permits the Court to determine the rationale of the ALJ's decision, the ALJ's failure to discuss specific evidence or explain why he considered it unpersuasive is not error. *See Barringer*, 358 F. Supp. 2d at 79.

### D. Whether the ALJ Erred in Failing to Obtain Vocational Expert Testimony

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at15-16 [Def.'s Mem. of Law].) The Court would only add the following analysis.

At step five of the sequential analysis, the Commissioner can usually meet his burden to establish that, if a plaintiff is unable to perform his past work, there is other work which he could perform, by reliance on the Medical–Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from significant non-exertional limitations that significantly limit his employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606).

Here, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, except that he is limited to understanding, remembering and carrying out simple instructions. (T. 17-19.) Plaintiff argues that the ALJ erred in failing to obtain the testimony of a vocational expert, which was required because the ALJ found that Plaintiff could not perform the full range of light work. The Court disagrees. "[T]he mere existence of a nonexertional impairment does not automatically preclude reliance on the guidelines." *Zabala*, 595 F.3d at 410-411 (citing *Bapp*, 802 F.2d at 603). In *Zabala*, the court found that the ALJ's use of the Medical-Vocational Guidelines to conclude that plaintiff's non-exertional limitations did not result in an additional loss of work capacity was permissible where the plaintiff's mental condition did not limit her ability to perform unskilled work, including carrying out simple instructions. *See Zabala*, 595 F.3d at 411. Similarly, here the ALJ found that Plaintiff is limited

11

to understanding, remembering and carrying out simple instructions, which does not significantly limit his capacity to perform light work.  Therefore, the ALJ did not err in relying on the Grids to conclude, at step five of his analysis, that jobs exist in the economy that Plaintiff can perform, and his decision in this regard is affirmed.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 7, 2012
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge